EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| YAHIA A. HAZAIMEH, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:14-CV-813 |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss Amended Complaint ("Motion") (ECF No. 12), filed on January 16, 2015. Plaintiffs filed a response in opposition on February 6, 2015 ("Opp'n Mem.") (ECF No. 16), and Defendants subsequently filed a reply on February 19, 2015 ("Reply Mem.") (ECF No. 17). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

Plaintiffs, Yahia A. Hazaimeh and Karen A. Hazaimeh (collectively, the "Hazaimehs"), purchased a home on January 7, 2009 located at 5113 Futura Avenue, Richmond, Virginia 23231. On that day, the Hazaimehs entered into a mortgage loan in the principal amount of $67,950, in which they were the borrowers and David L. Holley and Charlotte Y. Holley (collectively, the "Holleys") were the lenders. The loan was evidenced by a note, signed by the Hazaimehs, and secured by a deed of trust. (*See* Am. Compl. Ex. A.) The deed of trust appointed Robert E. Kane, Jr. ("Kane") and Theodore M. Galanides ("Galanides") as trustees.

On December 6, 2000, the Holleys and the Hazaimehs entered into a "Modification of Note and Deed of Trust" (the "modification agreement"). (Am. Compl. Ex. B.) The modification

agreement deleted all references to the "balloon payment" provided for in the original note and deed of trust. The Holleys subsequently assigned the note, and U.S. Bank asserted rights as holder of the note. U.S. Bank then retained Ocwen as servicer as to the note and the deed of trust.

In late 2011, the Hazaimehs fell behind in payments on the note. In April of 2012, Ocwen sent a letter to the Hazaimehs stating that the loan was due to mature within the next thirty days. (Am. Compl. Ex. C.) Over the course of 2012, the Hazaimehs sent payments to Ocwen through MoneyGram, but Ocwen returned those payments, asserting that such payments were insufficient to cover the balance due on the loan. Additionally over the course of that year, Joylyn D. Givens ("Givens") made telephone calls to Ocwen and Samuel I. White, P.C. ("White") on behalf of Karen Hazaimeh. During these calls, Givens would represent herself as being Karen Hazaimeh, with Karen Hazaimeh's consent. Ocwen representatives allegedly stated that the loan was due and owing for a balloon payment and the Hazaimehs would have to pay off the loan through the balloon payment to avoid foreclosure of the residence. Givens disputed with Ocwen that there was a balloon payment due and owing on the loan.

In April of 2012, Karen Hazaimeh contacted James A. Chisholm, Esquire ("Chisholm") regarding the loan. Chisholm provided advice to Karen Hazaimeh about how to handle the ongoing dispute with Ocwen regarding the balloon payment, specifically advising her to send to Ocwen a copy of the modification agreement. On August 7, 2012, Karen Hazaimeh, through Givens, sent to Ocwen a letter enclosing copies of the deed of trust and modification agreement and requested that Ocwen confirm that there was no balloon payment on the loan. However, Ocwen never responded.

In August of 2012, U.S. Bank removed the original trustees on the deed of trust and appointed White as substitute trustee. (Am. Compl. Ex. F.) On August 14, 2012, White sent a letter to the Hazaimehs, which stated that the Hazaimehs' property would be foreclosed upon, and the amount of the remaining debt was $59,183.13. (Am. Compl. Ex. G.) The Hazaimehs

responded with a letter asking "how much [they] would have to pay to bring [the] note current excluding the balloon payment of $59,183.13." (Am. Compl. Ex. H.) On September 6, 2012, the Hazaimehs, through Givens, sent another letter to White requesting reinstatement figures for the loan.

Ocwen instructed White to foreclose on the residence, and White subsequently placed a foreclosure advertisement in the Richmond Times-Dispatch on October 23, 2012 and October 30, 2012 for foreclosure of the residence on November 6, 2012 at 1:00 p.m. Karen Hazaimeh learned of the scheduled foreclosure near the end of October 2012 after Givens showed her the advertisement in the Richmond Times-Dispatch.

On October 22, 2012, Karen E. Dailey, Esquire, an attorney then employed by White, wrote a letter to the Hazaimehs, which stated that White was "requesting reinstatement figures so that you may know the amount needed in order to bring your loan current." (Am. Compl. Ex. I.) On October 26, 2012, White purported to provide a reinstatement for the loan; however, that letter stated a reinstatement figure "good through October 24, 2012," a date two days prior to the date of the letter. (Am. Compl. Ex. J.)

On November 1, 2012, Givens called White and spoke with a representative of White. Givens provided that representative an e-mail address for White to use in sending the reinstatement amount for the loan to Karen Hazaimeh. On November 5, 2012 at approximately 9:30 a.m., Givens again called White and spoke with another representative. Givens was told that she would be sent an e-mail with the reinstatement amount; however, she never received an e-mail.

On that same day at approximately 1:10 p.m., Givens called Ocwen and spoke with a representative identified as "Javed." Javed provided to Givens a reinstatement amount of $8,441.69. Javed then stated that if Karen Hazaimeh made a MoneyGram payment in that amount to Ocwen that day and then called Ocwen and provided the identifying information for that MoneyGram payment, then Ocwen would stop the foreclosure sale of the residence

scheduled for November 6, 2012.

Relying on Javed's statement, Karen Hazaimeh, acting through Givens, made a payment to Ocwen of $8,441.69 through MoneyGram, and called Ocwen to notify the servicer of the payment. Hazaimeh and Givens spoke to a male Ocwen representative (the "5:25 p.m. Ocwen representative") who acknowledged the MoneyGram payment but responded that such payment would not stop the foreclosure sale because the Hazaimehs owed a balloon payment on the loan. Givens demanded to speak with the representative's supervisor, and Givens and Karen Hazaimeh were subsequently transferred to a female Ocwen representative who identified herself as "Francis." Francis requested that Karen Hazaimeh fax to her copies of the deed of trust and modification agreement. After faxing over the requested documents, Givens and Karen Hazaimeh again called Francis, and Francis assured them that the foreclosure sale had been put on hold and would not proceed on November 6, 2012. (*See* Am. Compl. Ex. L.)

However, the foreclosure did in fact proceed on November 6, 2012. White conducted the sale, and U.S. Bank made the high bid of $62,989, which was significantly less than the $117,800 fair value of the residence. Title to the residence was subsequently transferred by White to U.S. Bank. (Am. Compl. Ex. M.)

On February 4, 2013, U.S. Bank filed an unlawful detainer summons against the Hazaimehs in the General District Court of Henrico County, Virginia. The Court granted judgment for possession of the residence to U.S. Bank on May 6, 2013. The Hazaimehs then timely appealed to the Circuit Court of Henrico County, Virginia, and the Circuit Court affirmed the judgment. U.S. Bank subsequently sought and obtained a writ of possession for eviction of the occupants of the residence, and a final notice for eviction was posted at the residence for a lock-out on October 1, 2013. The occupants at the time, Karen Hazaimeh's son, daughter, and nephew, moved out of the residence prior to the lock-out.

On November 6, 2014, Plaintiffs filed a five-count Complaint in the Circuit Court of the City of Richmond, which alleged actual fraud, constructive fraud, breach of the deed of trust,

breach of contract, and breach of the implied covenant of good faith and fear dealing. Defendants removed the case to this Court on December 3, 2014, and filed their first motion to dismiss on December 10, 2014. Plaintiffs then filed an Amended Complaint on December 31, 2014, thereby mooting the Defendants' original motion to dismiss. (*See* O., January 6, 2015, ECF No. 11.) The three-count Amended Complaint alleges actual fraud (count one), constructive fraud (count two), and breach of the implied covenant of good faith and fair dealing (count three). Defendants subsequently filed the instant Motion to Dismiss on January 16, 2015.

## II.   LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. In other words, the plaintiff's complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked

assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Further, in ruling on a motion to dismiss, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (citations omitted); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

### III.   DISCUSSION

#### (1) Claim 1: Plaintiffs Have Failed to Plead an Actionable Claim for Fraud (Counts I and II)

##### (a) Plaintiffs' Claims for Fraud Are Barred by the Economic Loss Rule

The economic loss rule "is intended to preserve the bedrock principle that contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.'" *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) (quoting *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 517 (Va. 1983)). The rule bars parties from recovering in tort "simply by recasting a contract claim as a tort claim." *Waytec Elecs. Corp. v. Rohm and Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 491 (W.D. Va. 2006); *see also Tidewater Beverage Servs., Inc. v. Coca Cola Co., Inc.*, 907 F. Supp. 943, 948 (E.D. Va. 1995) (citing *Madison Mgmt. Grp., Inc.*, 918 F.2d at 447) (the economic loss rule protects only those defendants who have breached only contractual duties). The Supreme Court of Virginia has stated,

The law of torts is well equipped to offer redress for losses suffered by reason of a

> 'breach of some duty imposed by law to protect the broad interests of social policy.' [citation omitted] Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988). "In other words, if the defendant breaches a duty owned [sic] to the plaintiff only through a contractual agreement, the plaintiff may not recover purely economic losses in a related tort action against the defendant." *Tidewater Beverage Servs., Inc.*, 907 F. Supp. at 947–48.

The Fourth Circuit has clearly defined when the economic loss rule should not apply. In *Madison* the Court stated,

> The rule's purpose therefore is not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim. In such situations, there is no risk that a plaintiff will be pursuing a tort remedy when in fact he should be confined to a contract remedy. Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply.

*Madison Mgmt. Grp., Inc.*, 918 F.2d at 446.

In this case, Defendants argue that "[i]f there was any promise made by Defendants, it appears that the promises were of a contractual nature," (Mem. in Supp. of Mot. at 7), and therefore "Plaintiffs could not have a claim for fraud and are left with, if anything, a claim for breach of an agreement," (*id.* at 8). However, the Court finds that "[t]he case at bar does not involve any such attempt to dress up a contract claim in a fraud suit of clothes." *Madison Mgmt. Grp., Inc.*, 918 F.2d at 447 (citation and internal quotation marks omitted). Rather, Plaintiffs have alleged that Defendants violated a duty imposed by tort law, *i.e.*, the duty not to commit fraud. *Id.* Specifically, Plaintiffs allege that Defendants knew at the time of the alleged misrepresentation that the foreclosure would not be halted. *See id.*

In their reply, Defendants attempt to distinguish *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546 (E.D. Va. Apr. 18, 2012), from the instant case by asserting that here Plaintiffs' argument is centered on Defendants' failure to "uphold their end of the

contract." (Reply Mem. at 4.) Similar to *Bennett*, 2012 WL 1354546, at *9, in this case Defendants did not have a contractual duty to cancel the foreclosure of Plaintiffs' home. Plaintiffs explicitly admit this in their opposition memorandum. (Opp'n Mem. at 12.) However, contrary to Defendants' argument, Plaintiffs are not alleging a failure to uphold the contract; rather, as stated above, they are alleging a violation of the independent duty not to commit fraud. "Accordingly, [] Defendants are not entitled to the protection of the economic loss rule, which protects only those defendants who have breached only contractual duties." *Madison Mgmt. Grp., Inc.*, 918 F.2d at 447.

### (b) A Claim for Fraud Cannot be Predicated Upon Future Promises

To plead actual fraud under Virginia law, a plaintiff must assert six elements: (1) a false misrepresentation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2006). To state a cause of action for constructive fraud, a plaintiff is required to "plead that the false representation was made innocently, or negligently, while all other elements [of fraud] remain the same." *Sales v. Kecoughtan Housing Co., Ltd.*, 690 S.E.2d 91, 94 (Va. 2010) (citation omitted). Additionally, and more importantly for purposes of Defendants' Motion, "a fraud claim must be based on the misrepresentation of a present or *pre-existing fact*." *Albanese v. WCI Communities, Inc.*, 530 F. Supp. 2d 752, 770 (E.D. Va. 2007) (citations omitted). A fraud claim cannot be premised "on unfulfilled promises or statements about future events." *Id.* (citations omitted). In other words, "[a] promise to perform an act in the future is not, in a legal sense, a representation as that term is used in the fraud context." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) (citing *Soble v. Herman*, 9 S.E.2d 459 (Va. 1940)). Otherwise, "[w]ithout that rule almost every breach of contract could be claimed to be fraud." *Id.*

8

However, one exception to this general rule is "when a promisor makes a promise intending not to perform, this promise constitutes a misrepresentation of present fact if the promisor intended that the promisee act to his detriment." *Albanese*, 530 F. Supp. 2d at 770 (citing *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985)); *see also Tidewater Beverage Servs., Inc.*, 907 F. Supp. at 947 ("The alleged misrepresentation is not simply a promise to do something in the future; it is, instead, a deliberate misstatement of an existing fact related to Defendant's present intentions."). "Under no circumstances, however, will a promise of future action support a claim of constructive fraud." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008) (citations omitted).

In *Matanic v. Wells Fargo Bank, N.A.*, No. 3:12CV472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012), Plaintiff alleged that a representative of the Defendant told him that Defendant would be willing to stop the foreclosure proceedings if Plaintiff provided federal tax information. *Id.* at *6. Plaintiff alleged that such statements were false because Defendant intended to foreclose on the home regardless of whether or not tax documentation was received. *Id.* "Taking this allegation as true, [the district court found that] it satisfies the requirement that the promise be false at the time the promisor made the statements." *Id.*; *see also Albayero v. Wells Fargo Bank, N.A.*, No. 3:11CV201-HEH, 2011 WL 4748341, at *5 (E.D. Va. Oct. 5, 2011). Therefore, the Court ultimately denied the Defendant's motion to dismiss.

Plaintiffs' Amended Complaint identifies two statements which they allege constitute actual fraud. *See Lissmann*, 848 F.2d at 53 ("The threshold inquiry with fraud looks to what representation was allegedly made."). The first statement was made on November 5, 2012 by an Ocwen representative who identified himself as "Javed." (Am. Compl. ¶ 43.) Specifically, the Amended Complaint alleges, "Javed . . . stated that if Karen Hazaimeh made a MoneyGram payment of $8,441.69 to Ocwen that day [November 5, 2012] and then called Ocwen and provided to Ocwen the identifying information for that MoneyGram payment, then Ocwen would stop the foreclosure sale of the residence scheduled for November 6, 2012." (*Id.*) Plaintiffs

allege that Javed's assurance was intentionally false and fraudulent when made as "Ocwen and U.S. Bank intended to foreclose on the residence on November 6, 2012 whether or not Karen Hazaimeh made the MoneyGram payment . . . ." (*Id.* at ¶ 45.) The second fraudulent statement was made by a female representative who identified herself as "Francis." (*Id.* at ¶ 58.) After Karen Hazaimeh, through Givens, faxed copies of the deed of trust and modification agreement to Ocwen at the number provided by Francis, (*id.* at ¶ 60), Francis "stated that the foreclosure sale had been put on hold and would not proceed on November 6, 2012, (*id.* at ¶ 61). Plaintiffs allege that such statement was also intentionally false and fraudulent when made. (*Id.* at ¶ 63.) This latter statement is also the basis for Plaintiffs' constructive fraud claim. (*See id.* at ¶ 95.)

First, the alleged misrepresentation made by "Francis" where she stated "the foreclosure sale had been put on hold" may be classified as a statement of present fact, and thus may form the basis of both the actual and constructive fraud claims.[1] *See Supervalu, Inc.*, 666 S.E.2d at 368. Second, the statement made by "Javed," although concerning a future event, may be classified as a misrepresentation as Plaintiffs have pleaded, "Ocwen and U.S. Bank intended to foreclose on the residence on November 6, 2012 whether or not Karen Hazaimeh made the Money Gram payment of $8,441.69." (Am. Compl. ¶ 45.) Taking these allegations as true, the Court can reasonably infer that Javed made the statement intending not to perform—thus constituting a misrepresentation of present fact. *Albanese*, 530 F. Supp. 2d at 770. For those reasons, the Court finds that Plaintiffs have adequately pleaded their fraud claims.

### (c) *Plaintiffs' Alleged Damages Are Too Speculative and Did Not Result From the Alleged Misrepresentation*

Under Virginia law, a plaintiff alleging fraud "must prove damages which are caused by his detrimental reliance on a defendant's material misrepresentation." *Murray v. Hadid*, 385

---

[1] In their reply, Defendants argue that Plaintiffs fail to account for the full context of Francis' statement. (Reply Mem. at 5.) The Amended Complaint alleges, in full, that Francis stated "the foreclosure had been put on hold and *would not proceed on November 6, 2012.*" (Am. Compl. ¶ 61) (emphasis added). However, this Court in *Matanic*, when faced with a similar misrepresentation of halting a foreclosure if Plaintiff provided federal tax information, denied a motion to dismiss Plaintiff's constructive fraud claim. 2012 WL 4321634, at *7. Based on that precedent, the Court similarly finds that Plaintiffs have adequately pleaded a constructive fraud claim.

S.E.2d 898, 903 (Va. 1989) (citing *Winn v. Aleda Const. Co.*, 315 S.E.2d 193, 195 (Va. 1984)). Plaintiffs claim that if they had not relied on Defendants' alleged misrepresentations on November 5, 2012, they "would have had recourse to stop the foreclosure and could and would have successfully stopped the foreclosure [which occurred on November 6, 2012]." (Am. Compl. ¶ 71.) Specifically, Plaintiffs allege that Karen Hazaimeh would have contacted Chisholm for assistance in stopping the foreclosure sale and Chisholm would have acted, if necessary to stop the foreclosure, to ensure that Karen Hazaimeh was able to file a Chapter 13 bankruptcy with a plan to sell the residence to pay off the loan or cure the arrearage. (*Id.*) Defendants argue that Plaintiffs' claim that they would have been able to stop the foreclosure in one day is entirely speculative. (Mem. in Supp. of Mot. at 6.)

The district court in *Matanic*, under similar factual circumstances, denied the Defendant's motion to dismiss after finding "skeletal allegation of damages" sufficient to survive such motion. *Matanic*, 2012 WL 4321634, at *6. The Plaintiff in that case alleged two misrepresentations, one occurring on December 13, 2011 and the other on December 14, 2011, regarding halting the foreclosure on Plaintiff's property if certain federal tax information was received. *Id.* Defendants proceeded with the foreclosure on December 15, 2011. *Id.* The Plaintiff claimed damages as a result of his reliance on defendant's misrepresentation, namely that he did not obtain private counsel who could have stopped the foreclosure sale. *Id.*; *see also Thomas v. Bank of Am., N.A.*, No. 4:12cv143, at *8–9 (E.D. Va. Mar. 19, 2013) (holding that Plaintiffs adequately pleaded reliance and damages on Defendants' misrepresentations by alleging that Plaintiffs did not obtain counsel to stop the foreclosure sale and Plaintiffs could have stopped the foreclosure by filing for bankruptcy). Based on *Matanic*, Plaintiffs have sufficiently stated a claim to survive this stage of the litigation process.

//

//

//

11

**(d) Plaintiffs' Fraud Claims Are Barred by the Statute of Limitations**

If all facts necessary for such a defense clearly appear on the face of the complaint, then "[t]he statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim." *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (citing *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)). In a federal diversity action, state law governs the existence and interpretation of any statute of limitations. *Va. Imports, Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003). Virginia law sets a two-year limitations period for claims of fraud and constructive fraud. Va. Code § 8.01-243 ("[E]very action for damages resulting from fraud, shall be brought within two years after the cause of action accrues."). Va. Code § 8.01-249 provides that a cause of action shall be deemed to accrue "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1). To exercise due diligence, the plaintiff bears the burden of proving that he used "'[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.'" *Va. Imports, Inc.*, 296 F. Supp. 2d at 699 (quoting *STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d 394, 397 (Va. 1990)).

Defendants argue "that on October 23, 2012 or October 30, 2012, Plaintiffs knew, or by the exercise of due diligence reasonably should have known, of any alleged misrepresentations in the April 2012 letter or the foreclosure advertisements, and that the foreclosure of their property would take place on November 6, 2012." (Mem. in Supp. of Mot. at 11.) However, Defendants argument misconstrues the relevant facts. Plaintiffs allege that representatives of the Defendants made two fraudulent statements, both occurring on November 5, 2012. Plaintiffs did not discover the fraud however until the following day–November 6, 2012–when the foreclosure sale proceeded as scheduled. Based on the April 2012 letter or the October 2012

foreclosure advertisements, Plaintiffs may have been aware of the scheduled foreclosure, but this does not equate to Plaintiffs' discovery of the claimed fraudulent misrepresentations. Accordingly, Plaintiffs properly filed their Complaint two years later on November 6, 2014. Plaintiffs' claims therefore are not barred by the statute of limitations.

For the aforementioned reasons, the Motion is DENIED as to Claim 1.

### (2) Claim 2: Plaintiffs Have Failed to Plead a Claim for Breach of the Implied Warranty of Good Faith and Fair Dealing (Count III)

Plaintiffs recognize that U.S. Bank did not have a contractual duty to stop the foreclosure of their home, but they argue that U.S. Bank did have the discretion to stop the foreclosure. (Am. Compl. ¶ 101.) Plaintiffs contend that in exercising such discretion, U.S. Bank acted with bad faith and unfair dealing. (*Id.* at ¶ 103.)

"In Virginia, every contact contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citations omitted). To establish a claim for breach of the implied covenant of good faith, a plaintiff must prove (1) a contractual relationship between the parties, and (2) a breach of the implied covenant. *Id.* (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996)). But this implied covenant is not recognized "in contracts outside of those governed by the Uniform Commercial Code ("U.C.C."), and the U.C.C. 'expressly excludes the transfer of realty from its provisions.'" *Harrison v. U.S. Bank Nat'l Ass'n*, No. 3:12-cv00224, 2012 WL 2366163, at * (E.D. Va. June 20, 2012) (quoting *Greenwood Assocs., Inc. v. Crestar Bank*, 448 S.E.2d 399, 402 (Va. 1994)); *see also* Va. Code § 8.9A-109(d)(11) ("This title does not apply to the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder . . . ."). Thus, as a result Plaintiffs in this case are barred by statute from arguing that Defendants breached the implied covenant of good faith and fair dealing.[2] For that

---

[2] Even if Plaintiffs were not barred by statute, Plaintiffs could still not make out a claim for breach of the implied covenant of good faith and fair dealing. The Note explicitly states that the borrower will enter default if he does "not pay the full amount of each monthly payment on the date it is due." It is undisputed that in late 2011, Plaintiffs fell behind in payments on the note. (Am. Compl. ¶ 19.) "Thus, [Defendants']

reason, the Court GRANTS the Motion as to Claim 2, and accordingly DISMISSES Count Three of the Amended Complaint.

**(3) <u>Claim 3: Any State Law Claims Arising From Furnishing Information to Credit Reporting Agencies are Barred Pursuant to 15 U.S.C. § 16811t(b)(1)(F)</u>**

Plaintiffs' Amended Complaint alleges that "Ocwen and U.S. Bank . . . wrongfully reported to credit bureaus that there had been a valid foreclosure of the residence, which damaged Karen Hazaimeh's credit rating, causing her economic harm." (Am. Compl. ¶ 79.) Defendants argue that "[t]o the extent Plaintiffs' Complaint could be interpreted as asserting state law claims for the furnishing or reporting of information to credit reporting agencies, all such state law claims–whether common law or statutory–are barred by express federal preemption under section 1681t(b)(1)(F) of the [Fair Credit Reporting Act ("FCRA")]." (Mem. in Supp. of Mot. at 13.) Plaintiffs on the other hand contend that they have not averred a claim under the FCRA nor are the claims relating to lender credit reporting preempted by the FCRA. (Opp'n Mem. at 17.)

The FCRA "was enacted to ensure privacy and accuracy with regards to credit reporting and contains two clauses which preempt individuals from bringing certain actions against consumer reporting agencies . . ., those who furnish consumer credit information . . ., and/or users of such consumer credit information." *Joiner v. Revco Discount Drug Centers, Inc.*, 467 F. Supp. 2d 508, 512 (W.D.N.C. 2006).[3] The first preemption clause, Section 1681h(e), states

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the

contractual right to foreclose on the property vested at the time of Plaintiffs' default. Accordingly, the actions taken by Defendants merely amounted to an exercise of their contractual rights." *Albayero*, 2011 WL 4748341, at *6. Plaintiffs even acknowledge that this Court has previously held that similar fraud claims do not constitute a breach of the common law implied covenant of good faith and fair dealing. (Opp'n Mem. at 19.)

[3] U.S. Bank states that it is a "furnisher" of information under the FCRA. (Reply Mem. at 7.)

> user has taken adverse action, based in whole or in part on the report except as to
> false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). The FCRA's other preemption clause, § 1681t, provides that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 provides in turn, "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Although the Fourth Circuit has not conclusively ruled on the issue, seven of the nine district courts in the Fourth Circuit have reconciled the apparent conflict between these two preemption provisions by adopting the "'statutory approach'–holding that § 1681t(b)(1)(F) only applies to state statutory claims and that § 1681h(e) only addresses state common law claims." *Bourdelais v. JPMorgan Chase Bank, N.A.*, 3:10CV670, 2012 WL 5404084, at *7 (E.D. Va. Nov. 5, 2012) (citing seven cases).

In applying this approach to the present case, Plaintiffs' common law claims of fraud and breach of the implied covenant of good faith are subject to § 1681h(e) of the FCRA, not § 1681t(b)(1)(F). *See id.* Further, § 1681h does not preempt Plaintiffs' credit damages claims, as these claims are part of Plaintiffs' common law allegations and do not relate to defamation, invasion of privacy, or negligence. *See* 15 U.S.C. § 1681h(e). In an attempt to avoid this inevitable conclusion, Defendants assert that "Plaintiffs attempt to disguise a plain action for defamation as an action for fraud and breach of the implied covenant of good faith and fair dealing." (Mem. in Supp. of Mot. at 6.) Defendants however fail to provide the Court with any further analysis or citation in support of adding these common law claims into the general category of defamatory actions. Thus, the Court finds that the FCRA does not preempt Plaintiffs' common law claims, and accordingly the Motion is DENIED as to Claim 3.

## IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, the Motion is GRANTED in part and DENIED in part. Specifically, the Motion is GRANTED as to Claim 2 and DENIED as to Claims 1 and 3.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___3rd_____ day of March 2015.